[Civ. No. 46404. First Dist., Div. Two. Mar. 19, 1981.]

BRUCE D. GREEN et al., Plaintiffs and Appellants, v.
CITY OF LIVERMORE, Defendant and Respondent.

**COUNSEL**

James J. Reilly, Donald L. Tipton and Thomas M. Dillon for Plaintiffs and Appellants.

Rodney A. Marraccini, J. Lucian Dobson III, Capps, Bishop, Marraccini & Staples and Capps, Staples, Ward and Hastings for Defendant and Respondent.

---

### Opinion

**TAYLOR, P. J.**—Plaintiffs, the surviving husband[1] and children of Marcelina Green, appeal[2] from a judgment sustaining without leave to amend the City of Livermore's (City) demurrer to their second amended complaint.[3]

Viewing the record in the light most favorable to the plaintiffs, as we must (*Dailey* v. *Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741, 745 [87 Cal.Rptr. 346, 470 P.2d 360]), the following facts appear: On August 11, 1977, several City police officers, acting in their official capacities as employees of the City, stopped a Ford automobile belonging to Jones and Hardgraves. All three occupants of the car, Jones, Hardgraves and Noble, were intoxicated. Hardgraves was driving the vehicle along public roads in the City. The officers arrested Hardgraves for drunk driving (Veh. Code, § 23102) and resisting arrest (Pen. Code, § 148) and took him into custody. At the time of his arrest, Hardgraves did not have possession of the car keys. However, the officers did not arrest either Jones or Noble and left them with the Ford without disabling or impounding it. The officers also did not remove any keys from the Ford. Shortly thereafter, Noble drove the Ford, struck the Green automobile and seriously injured the plaintiffs and killed Marcelina. Noble did not have a valid driver's license.

---

[1]Bruce Green was appointed as guardian ad litem of the three minor plaintiffs for the purpose of this action and filed in both capacities.

[2]No appeal lies from an order sustaining a demurrer without leave to amend (*Youngblood* v. *Board of Supervisors* (1978) 22 Cal.3d 644, 651 [150 Cal.Rptr. 242, 586 P.2d 556]). The appeal is properly taken only from the judgment of dismissal, which may be entered separately, or frequently is included in the same document as the order. The order dated August 25, 1978, which is the subject of this appeal, also includes a portion denominated "judgment." We assume that the term "of dismissal" was inadvertently omitted as the trial court must be presumed to have intended to enter a valid and appealable order.

[3]The second amended complaint alleged two causes of action: the first for wrongful death of Marcelina, and the second for personal injuries sustained by plaintiffs. The second cause of action realleges and incorporates the basic allegations of the first.

The second amended complaint, so far as pertinent, alleges as follows: "[U]nder the statutory and decisional law of the State of California, together with the enactments, regulations, and customs of the CITY and of the POLICE DEPARTMENT, Defendants HODGE and DOE TWO, and each of them, *were under a duty to use due care to take precautions to prevent* NOBLE, DOE THREE, and the other passengers from driving the automobile. Without limiting the generality of the foregoing, Defendants HODGE and DOE TWO were under a *mandatory duty to disable the automobile, to impound the automobile, or to remove the keys from the automobile*" (italics added).

The trial court sustained the City's demurrer on three grounds: 1) uncertainty; 2) the mandatory duty alleged does not exist; and 3) Government Code[4] sections 845 and 820.2 provide complete immunity[5] to the City.

■ Preliminarily, we turn briefly to the third ground, i.e., whether the statutes provide complete immunity.

In *Mann* v. *State of California* (1977) 70 Cal.App.3d 773 [139 Cal.Rptr. 82], the court rejected the immunity defense as to a police officer who stopped to investigate a car stranded in a speed change lane of a busy freeway. After a tow truck arrived, the officer left the scene without advising any of the individuals involved. Moments later, an oncoming motorist struck one of the cars involved and some of the people standing around it. The court held, at pages 778-779, that since the immunity statutes were designed only to prevent political decisions of policymaking officials from being second-guessed in personal injury litigation, section 845 did not provide immunity where the officer was negligent in the performance of his investigation. The court pointed out, at page 778, that the officer's decision "regarding whether to investigate or not *may have been a discretionary decision . . ., but once he decided to* investigate, any negligence on his part in his ministerial performance

---

[4]Hereafter, all references are to the Government Code.

[5]Section 845 provides that a public entity is not liable for failing to provide police protection, either at all or in an insufficient amount. Section 815.2, subdivision (a) provides that a public entity is liable for injury proximately caused by an act or omission of one of its employees acting within the scope of his employment, if the act or omission would give rise to a cause of action against that employee. Section 820.2 immunizes the employee from injury resulting from an act which was the result of the exercise of his discretion.

of the investigation *was clearly beyond the protection of the statutory discretionary immunity"* (italics added).

Similarly here, once the officers stopped the Ford, they assumed action on behalf of the public (*Quelvog* v. *City of Long Beach* (1970) 6 Cal.App.3d 584 [86 Cal.Rptr. 127]) and, therefore, were held "to the same standard of care as a private person or organization" (*Hartzler* v. *City of San Jose* (1975) 46 Cal.App.3d 6, 10 [120 Cal.Rptr. 5]). Furthermore, the reasoning of *Mann, supra,* 70 Cal.App.3d 773, indicates, at pages 779-780, that under current theories of liability sanctioned by the Restatement of Torts and other authorities, a public entity may be liable for the nonfeasance of its employees. The immunity defense was also rejected in *Clemente* v. *State of California* (1980) 101 Cal.App.3d 374 [161 Cal.Rptr. 799]. In *Clemente,* the same panel that decided *Mann, supra,* reiterated, at pages 378-379, its narrow interpretation of the immunity statutes "essentially only to protection against crime" and "from budgetary neglect."[6]

Also in accord is the recent decision of this court (Div. Three) in *Duarte* v. *City of San Jose* (1980)[7] 100 Cal.App.3d 648 [161 Cal.Rptr. 140], at pages 658-659, which recognized that in situations such as the instant one, officers had a duty of care toward innocent third parties like the plaintiffs here. On the duty issue, we cannot distinguish the instant case from *Duarte* and *Clemente, supra,* and the other authorities discussed above. The officers had questioned each of the passengers as they ascertained that Noble did not have a valid license, and had an

---

[6]In *Clemente, supra,* the investigating officer who arrived immediately after a motorcycle/pedestrian accident questioned witnesses, radioed his dispatcher for an ambulance, but failed to ascertain the identity of the motorcyclist. The motorcyclist left the scene after the investigating officer had left and before the ambulance or other officers arrived; the seriously injured pedestrian-plaintiff was never able to ascertain his identity.

[7]In *Duarte,* the officers stopped an intoxicated driver and left him unattended and alone in the police vehicle. The drunk driver promptly sped off in the police vehicle and collided with Duarte, who sued for the personal injuries sustained. Justice Scott emphasized the great injustice in denying recovery to innocent third parties where a police officer, once exercising his discretion to act, proceeds to discharge his duties in a careless manner. At page 659, Justice Scott emphasized that due care as an element of negligence presents a question of fact. The result in *Duarte,* of course, turned on two issues not present here: 1) Government Code section 845.8, subdivision (b), which provides absolute immunity (i.e., for both ministerial and discretionary acts) for an injury caused by the escape of a prisoner or arrested person (p. 654); 2) Vehicle Code section 17001, which holds a public entity financially accountable for its employees' torts committed with a motor vehicle during the course and scope of their employment (pp. 656-658).

opportunity to observe each one. Given the intoxicated state of Jones and Noble, there would be a question of fact as to whether, under the circumstances, it was reasonable for the officers not to take some steps, such as removing the keys to prevent its being driven by Noble (who had no valid license) or Jones. The instant allegations do not involve the discretion of the officers in deciding whether or not to investigate the Ford, but instead, only their negligence in the conduct of the discretionary investigation. As in *Clemente, supra,* at page 379, neither the discretionary immunity of section 820.2 nor the more specific discretionary immunity of failure to enforce a statute (§§ 821, 818.2) immunized the City from the legal consequences of the officers' negligence in failing to remove the keys from the vehicle. Thus, the trial court here erroneously sustained the City's demurrer on the grounds of the immunity provided by the statutes.

■ However, aside from the immunity issue, the question remains whether the trial court's order was proper as to the first two grounds, uncertainty and no mandatory duty. As this court (Div. One) explained in *Gonzales* v. *State of California* (1977) 68 Cal.App.3d 621 [137 Cal.Rptr. 681], at page 627: "[I]f any ground stated in a demurrer is sustainable, the trial court's action is proper." Accordingly, we must affirm the trial court's ruling on the demurrer if any of the grounds raised by the City requires the sustaining of the demurrer, whether or not the court specifies all the grounds (*Banerian* v. *O'Malley* (1974) 42 Cal.App.3d 604, 610 [116 Cal.Rptr. 919].)

■ Plaintiffs next contend that the trial court erred in sustaining the demurrer on the ground of uncertainty. The City's demurrer stated that the uncertainty arose from the fact that plaintiffs had not alleged the specific statutory enactment which imposed the mandatory duty upon the City. Adverting to the complaint, plaintiffs pursue their cause of action under section 815.6[8] and allege that under "the statutory and decisional law of the State of California, together with the enactments, regulations, and customs of the city and of the police department," there is a "mandatory duty to disable the automobile, to impound the

---

[8]Section 815.6 provides: "Where a public entity is under a *mandatory duty* imposed by an enactment that is designed to protect against the risk of a particular kind of injury, *the public entity is liable* for an injury of that kind *proximately caused by its failure* to discharge the duty unless the public entity establishes that it *exercised reasonable diligence to discharge the duty*" (italics added).

automobile, or to remove the keys from the automobile." They allege no specific enactment.

Relying on *Osgood* v. *County of Shasta* (1975) 50 Cal.App.3d 586, 590 [123 Cal.Rptr. 442], the City argues that a cause of action for breach of a mandatory duty must point to the "enactment" which gave rise to the duty. *Osgood* involved a wrongful death action arising out of a water skiing accident allegedly caused by the county's failure to warn the public of the dangerous and hazardous configuration of the shoreline of the man-made Lake Shasta on which the accident occurred. In sustaining the county's demurrer without leave to amend, the court noted, at page 590, that the plaintiffs had failed to state a cause of action under section 815.6 because "they point to no duty imposed upon Shasta County by any enactment."

The City's argument overlooks the fact that the uncertainty of the complaint as to the particular enactment, including the regulations and customs of its police department was capable of resolution by reference to facts presumptively within the knowledge of the City. Contrary to the City's contentions, regulations of local police departments have the force of law and are regulations within the meaning of section 811.6 (*Peterson* v. *City of Long Beach* (1979) 24 Cal.3d 238, 244-245 [155 Cal.Rptr. 360]).

■ Finally, we turn to the remaining ground on which the trial court sustained the demurrer, the nonexistence of the mandatory duty to disable or impound the automobile or remove the keys. We agree that the officers had no mandatory duty to arrest Jones or Noble or to impound the vehicle, as Vehicle Code section 22651 provides that an officer *may* remove a vehicle from the highway under specified circumstances, including the arrest of any person driving or in control of the vehicle (subd. (h)). Vehicle Code section 15 provides that "may" is permissive (*McCarthy* v. *Frost* (1973) 33 Cal.App.3d 872, 874-875 [109 Cal.Rptr. 470]). As pointed out in *McCarthy*, at page 875, the officers' "decision to arrest, or to take some protective action less drastic than arrest, [9] is an exercise of discretion for which a peace officer may not be held liable in tort." However, the officers were negligent when after they stopped the vehicle and arrested Hardgraves, they took no steps to

---

[9]We note that Penal Code section 836, which authorizes a peace officer to arrest a person who has committed a public offense, also uses "may." Plaintiffs' second amended complaint here did not allege that any of the passengers had committed a public offense.

remove the keys from the vehicle. Whether or not the keys in the Ford parked on the street was a dangerous condition of public property is properly a question of fact to be determined by a jury (*De La Rosa* v. *City of San Bernardino* (1971) 16 Cal.App.3d 739 [94 Cal.Rptr. 175]; *Curreri* v. *City etc. of San Francisco* (1968) 262 Cal.App.2d 603 [69 Cal.Rptr. 20]). We can only conclude that the court also erred in sustaining the demurrer on the ground of no mandatory duty.

The judgment of dismissal is reversed and the purported appeal from the order sustaining the demurrer is dismissed.

Rouse, J., and Smith, J., concurred.

A petition for a rehearing was denied April 17, 1981, and the opinion was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied May 13, 1981.