[Civ. No. 62385. Second Dist., Div. Three. Nov. 24, 1982.]

DAVID SMITH BONDS, Cross-complainant and Appellant, v.
THE STATE OF CALIFORNIA ex rel. CALIFORNIA HIGHWAY
PATROL, Cross-defendant and Respondent.

COUNSEL

Brown, Vars & Malone and Ronald Tracy Malone for Cross-complainant and Appellant.

George Deukmejian, Attorney General, Michael Franchetti, Chief Deputy Attorney General, Willard A. Shank, Chief Assistant Attorney General, Marvin Goldsmith, Assistant Attorney General, Robert H. Francis and Elizabeth A. Koen, Deputy Attorneys General, for Cross-defendant and Respondent.

OPINION

KLEIN, P. J.—Cross-complainant and appellant David Smith Bonds (Bonds) appeals from a judgment of dismissal entered in favor of cross-defendant and respondent State of California (State) acting by and through the California Highway Patrol (CHP) as a result of a demurrer filed by the State to Bonds' first amended cross-complaint for indemnity, equitable contribution and declaratory relief.

The State demurred on the grounds that the cross-complaint failed to state a cause of action. The State claimed that the CHP owed no duty to Bonds or alternatively, that the State and the CHP were immune under Government Code sections 815.2 and 820.2.

The demurrer was sustained without leave to amend and the judgment of dismissal followed.

We agree with the trial court that the cross-complaint fails to state a cause of action because the CHP owed Bonds no duty and therefore affirm the judgment.

PROCEDURAL AND FACTUAL BACKGROUND[1]

On February 24, 1979, Bonds was driving a rented U-Haul truck on Interstate 5 which collided with a Dodge motorhome parked on the side of the highway. The motorhome had parked, apparently to repair and/or remove a Ford Mustang, which was also parked on the side of the highway. The impact of the collision caused the motorhome to strike the Ford Mustang and two explosions resulted in serious injuries and death to two passengers in the motorhome.

---

[1]The facts as stated herein are taken from the pleadings.

The underlying action commenced when Old Republic Insurance Company filed a complaint in interpleader seeking to deposit the proceeds of its liability insurance policy on the U-Haul truck with the court so that the various claims to the proceeds could be settled. Bonds was named as a plaintiff therein.

The defendants, parents of the decedents, filed a cross-complaint for wrongful death against all named plaintiffs including Bonds. Bonds answered denying any negligence. Subsequently, he filed a cross-complaint for indemnity, contribution and declaratory relief against the State, acting by and through the CHP, and others not involved in this appeal.

The State demurred on the grounds that the complaint failed to state a cause of action. The trial court sustained the demurrer without leave to amend. Bonds appeals.

## CONTENTIONS

Bonds contends that his first amended complaint states a cause of action in that the CHP was negligent in failing to remove the Ford Mustang from the highway where it allegedly had been left for some 24 hours or to warn others on the highway. He further avers that the CHP should have known that failure to remove the vehicle would invite rescuers and that either the rescuers might drive vehicles with negligently designed gas tanks or that the Ford Mustang automobile had a defective gas tank.

The State responds that no duty existed to remove the vehicle from the highway and that since there was no duty to remove the car, then there can be no liability for negligence.

The State further asserts that even if a duty existed, the State is immune under Government Code sections 815.2, subdivisions (a) and (b) and 820.2, since the decision to remove the car was a discretionary act.[2]

---

[2] Government Code section 815.2, subdivisions (a) and (b) provides as follows: "(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative. [¶] (b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

Government Code section 820.2 provides as follows: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

Bonds also contends that once a duty arises, the government's immunity ceases, and that to grant immunity to "routine law enforcement functions" would amount to an unconstitutional violation of the right to due process of law, since it grants "an unreasonable veil of protection" to a privileged class of citizens.

## DISCUSSION

### 1. Government liability.

Bonds' contention that once a duty arises the government's immunity ceases, discloses a misunderstanding of the concepts relating to government liability. The California Supreme Court recently stated in *Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197 [185 Cal.Rptr. 252, 649 P.2d 894] that the issue of the applicability of statutory immunity does not arise until it is determined that a defendant otherwise owes a duty of care to a plaintiff and thus would be liable in the absence of such immunity. The court went on to explain that "[j]ust as immunity hurdles are not overcome by the existence of a special relationship, so does the possible inapplicability of immunity not create a special relationship where none otherwise exists." (*Id.*, at p. 202.)

### 2. No special relationship exists between the CHP and Bonds.

■ As a general rule, one owes no duty to control the conduct of another nor to warn those endangered by such conduct. Such a duty may arise, however, if "(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives the actor a right to protection." (Rest.2d Torts, § 315; *Davidson* v. *City of Westminster, supra,* 32 Cal.3d at p. 203; *Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 751-752 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701].)

The misconduct alleged by Bonds is that of a negligent omission rather than an affirmative act of negligence. The State can be held liable for the negligent omissions of an employee if a special relationship existed between the employee and the plaintiff. (*Mann* v. *State of California* (1977) 70 Cal.App.3d 773, 779 [139 Cal.Rptr. 82].)

The cases that have found the existence of a special relationship involved some act or omission on the part of the defendant that either created or changed a risk to a known person.

*Mann* v. *State of California, supra,* 70 Cal.App.3d at page 780, involved the question of whether a special relationship existed between a California Highway Patrol officer and the stranded motorists whom he stopped to assist and then left in a dangerous and unprotected position on the freeway. The *Mann* court stated that while there existed no special relationship between members of the California Highway Patrol and the motoring public generally, or between the California Highway Patrol and stranded motorists generally, once an officer has undertaken to investigate the plight of specific persons on a freeway and has become informed of the foreseeable danger to them from passing traffic, a special relationship arises requiring the officer to protect them by readily available means.

In *Mann,* the officer's conduct lulled the injured parties into a false sense of security and perhaps prevented other assistance from being sought, thereby contributing, changing or increasing the risk to the motorists who relied on the officer's protection. Essentially, the *Mann* case is an application of the "good samaritan" rule. (*Davidson* v. *City of Westminster, supra,* 32 Cal.3d at p. 208.)

In *Johnson* v. *State of California* (1968) 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352] a special relationship was found where the plaintiff was attacked by a minor who had been placed in her home by the state without any warning that the minor had homicidal tendencies. A special relationship was formed thereby because the state failed to warn the plaintiff of a foreseeable peril that was created by the placement and was not readily discoverable by the plaintiff.

A special relationship was also found in *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166]. There, however, the special relationship was based on the relationship between the psychiatrist and his patient, a third party. Due to the nature of the psychiatrist-patient relationship, the psychiatrist had a duty to warn the plaintiff as a specifically identifiable person that the patient intended to harm her.

Here, there is nothing in the actions of the CHP that could have caused Bonds or the other motorists involved to rely on CHP protection. The CHP had not investigated the plight of specific persons; it merely ticketed an illegally parked car. Its actions did not place Bonds in a position of foreseeable danger that would not be readily discoverable by him if he were exercising due care.[3] Nor

---

[3]The fact that an abandoned car on the side of the road is readily discoverable and anticipated by a motorist exercising due care disposes of Bonds' contention that a duty to remove the car is created by Government Code section 830.8 which states: "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the failure to provide traffic or

did the CHP's actions contribute to, increase or change a risk which otherwise existed.

To impose a duty upon the CHP such as pleaded by Bonds would serve to make the CHP virtually an insurer of safety on the highway instead of an enforcer of the vehicle code. Such a duty would be unduly burdensome on the public fisc and next to impossible to implement.

3. *Irrespective of the issue of special relationship, no duty was imposed on the CHP herein.*

We note that two recent cases have permitted causes of action in tort against governmental entities under circumstances wherein an investigation was undertaken by the officer without relying on the special relationship doctrine.

In *Green* v. *City of Livermore* (1981) 117 Cal.App.3d 82 [172 Cal.Rptr. 461], the police arrested an intoxicated driver but did not impound or disable the car. One of the passengers in the car, who was also intoxicated, drove the car from the scene of the arrest and struck another vehicle, killing Mrs. Green and injuring her husband and children.

The *Green* court determined that once the officers made the discretionary decision to investigate the original drunk driving incident and to arrest the driver, any negligence in performing the ministerial actions of the investigation was beyond the protection of the statutory immunity for discretionary acts. (*Id.*, at pp. 87-88.) "[O]nce the officers stopped the Ford, they assumed action on behalf of the public [citation] and, therefore, were held 'to the same standard of care as a private person or organization'. . . ." (*Id.*, at p. 88.)

The *Green* court agreed that the officers had no mandatory duty to impound the vehicle, but concluded that it was a question of fact as against a demurrer for failure to state a cause of action whether, under the circumstances, it was reasonable not to have removed the keys from the car and whether their failure to remove the keys created a dangerous condition of public property. (*Id.*, at pp. 89-91.)

In *Duarte* v. *City of San Jose* (1980) 100 Cal.App.3d 648 [161 Cal.Rptr. 140], the police arrested an intoxicated driver and left him unattended in the

---

warning signals, signs, markings or devices described in the Vehicle Code. Nothing in this section exonerates a public entity or public employee from liability for injury proximately caused by such failure if a signal, sign, marking or device (other than one described in Section 830.4) was necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care."

police vehicle. The arrested man drove off in the police vehicle and in the ensuing chase injured Duarte. The court initially determined that Government Code section 845.8, which ordinarily provides absolute immunity from liability for injuries caused by an "escaping or escaped arrested person," did not apply to defendant city under the circumstances. (*Id.*, at pp. 656-657.) The court also determined, however, that the city was potentially liable under Vehicle Code section 17001, which holds public entities financially accountable for its employees' torts committed with motor vehicles during the scope of their employment. (*Id.*, at p. 656.)

Turning to the question of legal duty, the *Duarte* court concluded that under relevant case law "a police officer's duty to operate his police vehicle with due care encompasses a duty to third persons such as plaintiff not to leave that vehicle unattended, its motor running, under circumstances which invite theft and flight." (*Id.*, at p. 659.) The officers' due care under the circumstances was therefore a question of fact for the jury.

In these cases, the court permitted claims based on the police officers' "failure to do certain things which would have wholly or partially protected" (*Mann* v. *State of California, supra,* 70 Cal.App.3d at p. 779) the injured plaintiffs, without discussing the special relationship doctrine utilized in *Mann* v. *State of California, supra.* In both *Green* and *Duarte,* however, the court also determined that the police were not acting in their discretionary capacity but were rather under specific duties of care. In *Green,* the decision to investigate placed the police under such a duty regarding the ministerial acts undertaken as a result of the investigation. In *Duarte,* the duty to operate police vehicles safely included a duty to third parties.

We see no similar duty of due care in the present fact situation. The CHP here did not exercise the discretion to undertake an investigation that would render the State liable for any alleged negligent ministerial acts of commission or omission. Nor did the CHP have a mandatory duty to remove the stranded vehicle from the highway. Indeed, Vehicle Code section 22651, subdivision (b) permits rather than requires removal of vehicles that are obstructing traffic or creating a hazard.[4]

As with the decision to investigate, an officer's " 'decision to arrest, or to take some protective action less drastic than arrest, is an exercise of discretion for which a peace officer may not be held liable in tort.' " (*Green* v. *City of*

---

[4]Vehicle Code section 22651, subdivision (b), states in pertinent part: "Any member of the California Highway Patrol . . ., may remove a vehicle from a highway . . .: [¶] . . . . [¶] (b) When any vehicle is left standing upon a highway . . . in such a condition as to create a hazard to other traffic . . . ."

*Livermore, supra,* 117 Cal.App.3d at p. 90; *McCarthy* v. *Frost* (1973) 33 Cal.App.3d 872, 875 [109 Cal.Rptr. 470].) A decision to remove or not to remove a stranded vehicle, without more, is thus a discretionary action and comes within the immunity described in Government Code section 820.2. (See *McCarthy* v. *Frost, supra,* 33 Cal.App.3d at p. 875.)

■ 4. *Immunity statutes are constitutional.*

Although we do not reach the issue of government immunity in this case, we feel compelled to address Bonds' contention that the government immunity statute involved in this case is an unconstitutional violation of due process as it denies the equal protection of the laws.

In *Stanley* v. *City and County of San Francisco* (1975) 48 Cal.App.3d 575 [121 Cal.Rptr. 842], the court stated at page 581: "A statutory discrimination will not be set aside as a denial of equal protection of the laws if any state of facts reasonably may be conceived to justify it (*McDonald* v. *Board of Election* (1969) 394 U.S. 802, 808-809; *McGowan* v. *Maryland* (1961) 366 U.S. 420, 425-426; *Metropolitan Co.* v. *Brownell* (1935) 294 U.S. 580.)" [Italics and parallel citations omitted.]

Here, the statutory discrimination is clearly justified. It is established that the state may impose conditions and limitations on the right to bring suit against it. (*Stanley* v. *City and County of San Francisco, supra,* at p. 579; *Vinnicombe* v. *State of California* (1959) 172 Cal.App.2d 54, 56 [341 P.2d 705].) Thus, the state may preclude causes of actions based on the discretionary acts of its employees.

Therefore, Bonds' contention that the government immunity statute violates the equal protection clause has no merit.

DISPOSITION

The judgment is affirmed.

Lui, J., and Danielson, J., concurred.

A petition for a rehearing was denied December 23, 1982, and appellant's petition for a hearing by the Supreme Court was denied January 26, 1983.