146 Cal.App.3d 983 (1983)
194 Cal. Rptr. 553
KATHLEEN ANNE JACKSON et al., Plaintiffs and Appellants,
v.
KENNETH LEROY CLEMENTS et al., Defendants and Respondents. JOHANNA TERESA LAGOY et al., Plaintiffs and Appellants,
v.
KENNETH LEROY CLEMENTS et al., Defendants and Respondents.
Docket Nos. AO20733, AO20735.
Court of Appeals of California, First District, Division Four.
August 11, 1983.
*985 COUNSEL
Abramson & Smith, William B. Smith, Shaw & Gisvold, Leonard Shaw and Daniel U. Smith for Plaintiffs and Appellants.
Patrick G. Grattan and Geary, Shea & O'Donnell for Defendants and Respondents.
OPINION
THE COURT.[*]
This consolidated appeal arises out of two wrongful death actions brought against the County of Sonoma and seven named law enforcement officers of the county. The actions rest on the officers' alleged negligence in permitting defendants Kenneth Clements and George Buickerood to drive their motor vehicles while under the influence of alcohol and in permitting decedent minor Jacqueline Lagoy to ride with Kenneth. Plaintiffs in the Jackson action are heirs of decedents Kathleen Bogardus and Charles Bogardus, who were killed in an automobile accident with Kenneth. Plaintiffs in the Lagoy action are the parents of Jacqueline, who was killed in the same accident. The general demurrers of the county and the officers to the Jackson and Lagoy complaints were sustained without leave to amend and the complaints were dismissed as to the county and its officers. Plaintiffs appeal.[1]
The Jackson complaint alleges that defendant officers, agents of the county, investigated a party where alcoholic beverages were being served to minors, including defendants Kenneth and George and the minor victim. Based on their observations at the party, the officers knew that the minors were consuming alcoholic beverages in an amount sufficient to render them under the influence of alcohol. They also knew that Kenneth and George (hereinafter minor defendants) were too intoxicated to drive and that each intended to drive himself away from the party. Notwithstanding knowledge of these circumstances, the officers failed to either stop the consumption of alcohol at the party or take steps to prevent the minor defendants from driving while they were under the influence of alcohol. The complaint further alleges that as a result of the officers' negligence, Highway 101 was rendered in a dangerous condition within the meaning of Government Code section 835, in that the minor defendants negligently drove their motor *986 vehicles on the highway while under the influence of alcohol so as to cause the fatal injuries to plaintiffs' decedents.
The Lagoy complaint makes substantially the same allegations. The complaint also alleges that the officers knew that Jacqueline's judgment was impaired by her consumption of alcohol, but that they nevertheless permitted her to leave the party in an automobile without taking her into custody.
The trial court sustained the defendants' demurrers on grounds of various statutory immunities as provided in the California Tort Claims Act of 1963. (Gov. Code, § 810 et seq.)
Plaintiffs contend that once the officers undertook to investigate the party and observed the intoxicated condition of the minors, they had a duty to prevent the minor defendants from driving and to protect the minor victim from accepting a ride with Kenneth. (See generally Davidson v. City of Westminster (1982) 32 Cal.3d 197, 203 [185 Cal. Rptr. 252, 649 P.2d 894]; Brockett v. Kitchen Boyd Motor Co. (1968) 264 Cal. App.2d 69 [70 Cal. Rptr. 136].) Defendants contend that the officers had no such duty and that, in any event, any liability is barred by the applicable statutory immunities (Gov. Code, §§ 815.2, subd. (b), 818.2, 820.2, 846).
In Davidson v. City of Westminster, supra, the Supreme Court stated that "the question of the applicability of a statutory immunity does not even arise until it is determined that a defendant otherwise owes a duty of care to the plaintiff and thus would be liable in the absence of such immunity.... [¶] `Absence of duty [rather than statutory immunity] is a particularly useful and conceptually more satisfactory rationale where, absent any "special relationship" between the officers and the plaintiff, the alleged tort consists merely in police nonfeasance.'" (32 Cal.3d 197, 202; accord, Williams v. State of California (1983) 34 Cal.3d 18, 22-23 [192 Cal. Rptr. 233, 664 P.2d 137].) In the present case the negligence charges against defendants rest on the officers' nonfeasance in their alleged failure to prevent Kenneth and George from driving[2] and to protect Jacqueline from her impaired judgment. Accordingly, we first consider the question of duty.
(1) "As a general rule, one owes no duty to control the conduct of another, nor to warn those endangered by such conduct. Such a duty may arise, however, if `(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the *987 other which gives the other a right to protection.'" (Davidson v. City of Westminster, supra, 32 Cal.3d 197, 203; see Tarasoff v. Regents of University of California (1976) 17 Cal.3d 425, 435 [131 Cal. Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166].)
(2) Relying on Buford v. State of California (1980) 104 Cal. App.3d 811 [164 Cal. Rptr. 264] and Harland v. State of California (1977) 75 Cal. App.3d 475 [160 Cal. Rptr. 613], plaintiffs in both actions assert that there was a "special relationship" between the officers and the minor defendants for the reasons that (1) the minors' conduct demonstrated that they were too intoxicated to drive and (2) the officers "exercised control" over Kenneth in that they detained him for about one-half hour during their investigation of the party.
Buford and Harland are inapposite. In both cases a special relationship was found because state personnel had been and continued to be responsible for the wrongdoer's care at the time he injured the victim. (Buford v. State of California, supra, 104 Cal. App.3d 811, 824; Harland v. State of California, supra, 75 Cal. App.3d 475, 480-481.) Here, in contrast, there is no allegation of an ongoing custodial relationship between the officers and the minor defendants. Plaintiffs cite no authority, nor has any been found, to support their claim that a police officer's observation of a citizen's conduct which might foreseeably create a risk of harm to others, or the officer's temporary detention of the citizen, creates a special relationship which imposes on the officer a duty to control the citizen's subsequent behavior. The case law is to the contrary. In Tarasoff v. Regents of University of California, supra, 17 Cal.3d 425, the court held that the police had no special relationship to a wrongdoer whom they had arrested and then released (id., at p. 444), even though the officers knew of the wrongdoer's potential for violence against a specific victim. (See Davidson v. City of Westminster, supra, 32 Cal.3d 197, 205, fn. 3.) In Davidson v. City of Westminster, the court held that a police officer's surveillance and recognition of the wrongdoer as a potential assailant did not establish a relationship imposing a duty to control the assailant's conduct. (32 Cal.3d at p. 205.)
(3a) Relying on Clemente v. State of California (1980) 101 Cal. App.3d 374 [161 Cal. Rptr. 799] and Mann v. State of California (1977) 70 Cal. App.3d 773 [139 Cal. Rptr. 82], plaintiffs in the Lagoy action contend further that there was a special relationship between the officers and the minor victim because the officers were at the party to investigate the serving of alcoholic beverages to minors, and in the discharge of their investigation they observed that the victim's state of intoxication was such as to impair her judgment.
*988 The circumstances in which a police officer or other public official will be held to have a special relationship with an injured party were examined in Davidson v. City of Westminster, supra, 32 Cal.3d 197, where police failed to protect a woman whom they knew was in proximity to a suspected assailant. On review of the relevant cases, the court concluded that a special relationship will be found (1) where there was a voluntary assumption by the public official of a duty toward the injured party (see Hartzler v. City of San Jose (1975) 46 Cal. App.3d 6, 9-10 [120 Cal. Rptr. 5] [citing cases]), (2) where the police had induced the victim's reliance on a promise, express or implied, that they would protect him (e.g., McCorkle v. City of Los Angeles (1969) 70 Cal.2d 252 [74 Cal. Rptr. 389, 449 P.2d 453]), or (3) where the victim was dependent upon the police or other public official for protection because the official either created the peril (Johnson v. State of California (1968) 69 Cal.2d 782 [73 Cal. Rptr. 240, 447 P.2d 352]) or increased or changed the risk which would have otherwise existed, "as by lulling the injured parties into a false sense of security and perhaps preventing other assistance from being sought." (32 Cal.3d at pp. 206-208; see also Williams v. State of California, supra, 34 Cal.3d at pp. 23-25.)
(3b) Here, as in Davidson, none of these doctrines applies. The officers did not create the peril to Jacqueline, they did not voluntarily assume a duty to protect her, they made no promise or statement to induce her reliance, nor did they alter the risk to her that would have otherwise existed. (See Davidson v. City of Westminster, supra, 32 Cal.3d 197, 208; Williams v. State of California, supra, 34 Cal.3d at pp. 27-28.) The case is thus distinguishable from Clemente and Mann, both of which involve a victim's dependence on a police officer who had "chosen to investigate the plight of specific persons on a freeway and informed himself of the foreseeable danger to them...." (Mann v. State of California, supra, 70 Cal. App.3d 773, 780; see Clemente v. State of California, supra, 101 Cal. App.3d 374, at pp. 379-380; see generally Davidson v. City of Westminster, supra, 32 Cal.3d 197, 207-208.) Here the officers had not "chosen to investigate" Jacqueline's plight, nor had they informed themselves of the "foreseeable danger" to her from accepting a ride with either of the minor defendants. The officers in this case did not involve themselves at all in Jacqueline's plans for departure from the party. (Cf. Mikialian v. City of Los Angeles (1978) 79 Cal. App.3d 150, 165 [144 Cal. Rptr. 794] [officers did not involve themselves in plaintiff's status vis-a-vis traffic near where he chose to park].)
Plaintiffs, however, assert that California courts extend civil liability to the fullest extent to deter drunk driving and that dismissal of the action against defendants was a violation of the Supreme Court's "resolve to support `all possible means of deterring persons from driving automobiles after *989 drinking....'" (Peterson v. Superior Court (1982) 31 Cal.3d 147, 155 [181 Cal. Rptr. 784, 642 P.2d 1305].) Although it unquestionably is the policy of this state to deter drunk driving, neither statutory nor decisional law authorizes the recognition of a cause of action against these defendants based on the officers' failure to take the protective action suggested by plaintiffs. As the Supreme Court stated in refusing to impose a duty on police officers to warn potential victims, recognition of such a cause of action "would raise difficult problems of causation and public policy." (Davidson v. City of Westminster, supra, 32 Cal.3d 197, 208.) Because we conclude that there is no special relationship in this case that would establish a duty of care for negligence liability purposes, we need not reach the issue of statutory immunity. (See id., at p. 203.)
The judgment is affirmed.
A petition for a rehearing was denied September 8, 1983, and appellants' petition for a hearing by the Supreme Court was denied October 19, 1983.
NOTES
[*] Before Caldecott, P.J., Rattigan, J., and Christian, J.
[1] Plaintiffs' causes of action against minors Kenneth Clements and George Buickerood and other defendants are unaffected by this proceeding.
[2] Defendant George Buickerood's role in the accident is not shown in the joint appendix or the parties' briefs.